The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
January 25, 2018

## 2018COA10

**No. 17CA0255, *People In Interest of M.R.M.* — Juvenile Court — Dependency and Neglect — Appeals — Final Appealable Order**

In this dependency and neglect proceeding, mother appeals
from the order dismissing the dependency and neglect proceeding
concerning her children. A division of the court of appeals
concludes that the order from which mother seeks to appeal is not a
final and appealable order. Instead, the final appealable order that
mother seeks relief from is an order allocating parental
responsibilities, which was entered approximately two weeks prior
to the order dismissing the dependency and neglect
proceeding. The division concludes that because mother's notice of
appeal was not filed within twenty-one days after the entry of the
order that was final and appealable, her appeal is untimely. For

that reason, the division dismisses the appeal for lack of jurisdiction.

COLORADO COURT OF APPEALS            **2018COA10**

Court of Appeals No. 17CA0255
Garfield County District Court No. 16JV21
Honorable Denise K. Lynch, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of M.R.M., M.M.M., and M.M.M., Children,

and Concerning M.M.A.,

Respondent-Appellant.

APPEAL DISMISSED

Division II
Opinion by JUDGE WELLING
Dailey and Hawthorne, JJ., concur

Announced January 25, 2018

Tari L. Williams, County Attorney, Heather K. Beattie, Assistant County
Attorney, Glenwood Springs, Colorado, for Petitioner-Appellee

Cassie L. Coleman and Luisa V. Berne, Guardians Ad Litem

Debra W. Dodd, Berthoud, Colorado, for Respondent-Appellant

¶ 1     In this dependency and neglect proceeding, M.M.A. (mother) appeals from the order dismissing the dependency and neglect proceeding concerning M.R.M., M.M.M., and M.A.M. (the children). We conclude that the order from which mother seeks to appeal is not a final and appealable order, and that because her notice of appeal was not filed within twenty-one days after the entry of the order that was final and appealable, her appeal is untimely. Therefore, we dismiss the appeal.

## I.  Background

¶ 2     In March 2016, the Garfield County Department of Human Services (the Department) sought and received temporary custody of eleven-year-old M.R.M., six-year-old M.M.M., and three-year-old M.A.M. based on concerns that the children had been exposed to drugs, violence in the home, and an injurious environment.

¶ 3     Shortly after the children were removed from mother's home, the Department filed a petition in dependency and neglect, naming mother and M.M. (father of M.R.M. and M.M.M., and stepfather to M.A.M.; hereafter father M.M.) as respondents.  The Department acknowledged that father M.M. was not M.A.M.'s biological father and that J.H., a resident of Florida, was suspected to be her father.

1

A caseworker contacted J.H. in Florida and learned that he had some mental health issues. The caseworker then discussed the situation with J.H.'s mother, who was his primary caretaker.

¶ 4     Although the court entered an order requiring genetic testing of J.H., and the Department said that it was "in the process of conducting a genetic test to determine paternity," no genetic test results appear in the record, and J.H. was never determined to be M.A.M.'s father or named as a party to the case.

¶ 5     The court initially placed the children with their maternal grandmother. However, father M.M. moved from Florida to Colorado and sought custody of all three children soon after the case began. He said that he shared custody of the older two children with mother under a domestic relations order, and he asserted that he should have custody of M.A.M. because he was her psychological parent. The court placed the children with him, under the protective supervision of the Department, at the end of March.

¶ 6     In May, father M.M. entered into a stipulated agreement for continued adjudication under section 19-3-505(5), C.R.S. 2017, and the court adjudicated the children dependent and neglected with

2

respect to mother after a trial. A division of this court affirmed the adjudication with respect to mother in *People in Interest of M.R.M.*, (Colo. App. No. 16CA1845, Nov. 16, 2017) (not published pursuant to C.A.R. 35(e)).

¶ 7 The court adopted treatment plans for both mother and father M.M. But a few weeks after the court approved mother's plan, father M.M. moved to modify the existing order under which he shared custody of the children with mother and to dismiss the dependency and neglect case. In support of his request for custody of M.A.M., as well as the older two children, he submitted a letter asserting that he was M.A.M.'s father because he was the only father she had ever known, and that he was willing to take full responsibility for her.

¶ 8 In November, the juvenile court entered an order allocating parental responsibilities for all three children between father M.M. and mother (the APR order). The court made no findings as to whether J.H. or father M.M. was M.A.M.'s legal father. Instead, the court concluded that it had jurisdiction to allocate parental responsibilities regarding M.A.M. to father M.M. under section 14-10-123(1)(d), C.R.S. 2017, which provides that a proceeding

concerning the allocation of parental responsibilities may be commenced by a person other than a parent who has been allocated parental responsibilities through a juvenile court order.

¶ 9   Approximately two weeks after the court entered the APR order, the court entered an order terminating its jurisdiction and closing the case.  Mother now appeals from that order.

## II.  Finality, Appealability, Timeliness, and Jurisdiction

¶ 10   "Unless a notice of appeal is timely filed, the court of appeals lacks jurisdiction to hear the appeal."  *People in Interest of A.J.*, 143 P.3d 1143, 1146 (Colo. App. 2006).  Because an appellate court must satisfy itself that it has jurisdiction to hear an appeal, it may raise jurisdictional defects nostra sponte.  *People v. S.X.G.*, 2012 CO 5, ¶ 9.  We asked the parties to file supplemental briefs addressing whether mother's appeal was timely.  After reviewing their briefs, we conclude that the appealable order was the APR order; mother's notice of appeal was not timely with respect to that order; and, therefore, we lack jurisdiction to consider her appeal.

¶ 11   Ordinarily, a final order or judgment, for purposes of appeal, is one that ends the action, leaving nothing further to be done to

4

determine the parties' rights. *People in Interest of O.C.*, 2012 COA 161, ¶ 8, *aff'd*, 2013 CO 56.

¶ 12    In a dependency and neglect proceeding, a post-dispositional order that neither terminates parental rights nor declines to terminate them generally does not end the proceeding and is not deemed a final, appealable order. *See, e.g., E.O. v. People*, 854 P.2d 797, 801 (Colo. 1993) (order approving permanency plan that did not effectuate any change in permanent custody or guardianship or terminate parental rights held not final and appealable; order expressly contemplated further court proceedings).

¶ 13    However, section 19-1-104(6), C.R.S. 2017, authorizes a juvenile court to enter an order allocating parental responsibilities for a child who is the subject of a dependency and neglect proceeding if requested to do so by a party to the case, and if no child custody action concerning the same child is pending in a district court. Section 19-1-104(6) further provides that following the entry of such an order, the court shall file a certified copy of the order in the county where the child will permanently reside, and thereafter, such order "shall be treated in the district court as any other decree issued in a proceeding concerning the allocation of

parental responsibilities." Thus, by entering an APR order as authorized by section 19-1-104(6) and ordering that a copy of the order be filed in the district court of the county where the child is to reside, the juvenile court ends the dependency and neglect proceeding and transfers jurisdiction over the child to the district court. Such an APR order is final and appealable. *See People in Interest of E.C.*, 259 P.3d 1272, 1276 (Colo. App. 2010) (entry of permanency planning order allocating parental responsibilities to aunt, followed by transfer of jurisdiction to the district court, ended the dependency and neglect proceedings; thus, the permanency planning order was a final and appealable order); *see also* C.A.R. 3.4(a) (expressly recognizing an order allocating parental responsibilities pursuant to section 19-1-104(6) as an appealable order).

¶ 14    Once a final and appealable judgment, decree, or order has been entered in a dependency and neglect proceeding, a party who wishes to appeal must file a notice of appeal within twenty-one days. C.A.R. 3.4(b)(1).

¶ 15    Here, the juvenile court entered an APR order, and ordered that the APR order be certified into an existing custody proceeding

in the district court as to the older two children, and certified into a new domestic relations case as to the youngest child. Under *E.C.*, the APR order was appealable. However, mother did not appeal from that order.

¶ 16   After the court entered the APR order, the Department moved to terminate the jurisdiction of the juvenile court and close the dependency and neglect case. The Department reported that the APR order had been certified into the existing domestic relations case as to the older two children, and into a new domestic relations case as to the youngest child, as the court had directed. The Department argued that there were no further child welfare issues in the dependency and neglect proceeding that required intervention by the court, and that it was in the children's best interests that the court terminate its jurisdiction and close the case. The court agreed and entered an order that purportedly terminated its jurisdiction and closed the dependency and neglect case. That is the order from which mother appeals.

¶ 17   Because mother's notice of appeal was filed more than twenty-one days after the entry of the APR order, we conclude that her appeal was untimely, and that accordingly, we lack jurisdiction to

hear the appeal.  However, mother contends that the juvenile court lacked jurisdiction to enter the APR order, or, if it did have jurisdiction, the APR order was not final and appealable.  She maintains that the order that ended the case was the order that terminated the court's jurisdiction and closed the case; that her notice of appeal was timely with respect to that order; and that, accordingly, this court has jurisdiction to hear her appeal.  We find her arguments unpersuasive.

### A.  Juvenile Court Jurisdiction, Finality, and Appealability of the APR Order

### 1.  Jurisdiction Under Section 19-1-104(6)

¶ 18     Mother contends that the APR order cannot be deemed a final, appealable order because the juvenile court did not have jurisdiction to make the findings needed to grant APR to a non-parent, and, indeed, did not have jurisdiction to enter an APR order at all for M.A.M.  She argues that because the court had not adjudicated M.A.M. dependent and neglected, with respect to her father, J.H., and the adjudication of the two older children with respect to father M.M. was still in "deferred" status, the APR order was invalid.

8

¶ 19    However, the question before us is not whether the court had jurisdiction to enter the order, but, rather, whether the order was final and appealable.  Even an order entered without jurisdiction may be a final, appealable order if it ends the action, leaving nothing further to be done to determine the rights of the parties.  *See, e.g., People in Interest of S.T.*, 2015 COA 147 (appeal from APR order entered after trial court found that the allegations of the dependency and neglect petition were not proven as to one parent; order vacated for lack of subject matter jurisdiction).

¶ 20    Under *E.C.* and C.A.R. 3.4(a), an APR order entered under section 19-1-104(6) is final and appealable.  And because mother did not file a timely appeal from that order, we must dismiss the appeal.

2.  Jurisdiction Under Section 19-4-130(1), C.R.S. 2017

¶ 21    Citing *S.T.*, mother also contends that "without commencing a paternity action, the juvenile court did not have independent jurisdiction under the Uniform Parentage Act to enter an order allocating parental responsibilities."  Here, too, we note that the issue before us is not whether the court had jurisdiction to enter an APR order, but whether the APR order was final and appealable,

9

and whether mother filed a timely appeal from that order. Having concluded that the APR order was final and appealable, and that mother's appeal was not timely, our inquiry is at an end because we lack appellate jurisdiction. And this is so even when, as here, the issue being raised on appeal is a challenge to the subject matter jurisdiction of the trial court. *Cf. Garcia v. Kubosh*, 377 S.W.3d 89, 107 n.41 (Tex. App. 2012) ("And when a party attempts to challenge a judgment or order but fails to timely file a notice of appeal, we generally dismiss the appeal for lack of appellate jurisdiction regardless of whether the appeal involves a challenge to the trial court's subject-matter jurisdiction.").

### 3. Paternity and Finality

¶ 22 Mother argues that the APR order was not a final, appealable order because it did not fully resolve the rights and liabilities of the parties as to paternity, support, and parental responsibilities with respect to M.A.M. We perceive no error.

### a. Law

¶ 23 Under the Uniform Parentage Act (UPA), sections 19-4-101 to -130, C.R.S. 2017, a man is presumed to be the natural father of a child if, as relevant here, "genetic tests or other tests of inherited

characteristics have been administered . . . and the results show that the alleged father is not excluded as the probable father and that the probability of his parentage is ninety-seven percent or higher." § 19-4-105(1)(f), C.R.S. 2017. A presumption of paternity may arise under other circumstances as well, as provided by section 19-4-105(1)(a)-(e). For example, a presumption of paternity arises if, while the child is under the age of majority, a man receives the child into his home and openly holds out the child as his natural child. § 19-4-105(1)(d).

¶ 24 If two or more presumptions of paternity arise which conflict with each other, and none has been rebutted by clear and convincing evidence, "the presumption which on the facts is founded on the weightier considerations of policy and logic controls." § 19-4-105(2)(a); *People in Interest of J.G.C.*, 2013 COA 171, ¶ 22.

¶ 25 Section 19-4-107, C.R.S. 2017, addresses who may bring an action under the UPA, for what purpose, and when. As relevant here, a child's natural mother may bring an action to determine the existence of the father and child relationship even if the child has no presumed father. *See* § 19-4-107(3).

¶ 26     If a paternity issue arises in a dependency and neglect proceeding, a paternity action may be joined with the dependency and neglect proceeding to resolve the issue. *J.G.C.,* ¶ 10. In that situation, the juvenile court must follow the procedures outlined in the UPA, as its failure to do so will deprive the court of subject matter jurisdiction to decide paternity. *Id.* at ¶ 11. As relevant here, the UPA provides that each man presumed to be the father of a child and each man alleged to be the natural father must be made a party to the paternity proceeding, or, if not subject to the personal jurisdiction of the court, must be given notice of the action and an opportunity to be heard. § 19-4-110, C.R.S. 2017; *J.G.C.,* ¶ 12.

b. Efforts to Determine M.A.M.'s Paternity

¶ 27     As an initial matter, we note that M.A.M. had no presumed father. Although mother alleged that J.H. was M.A.M.'s biological father, and there are indications in the record that J.H. had actual notice of the dependency and neglect proceeding through communications with the caseworker, he did not appear in the case; he did not seek a relationship with the child; and his biological relationship to the child was never established. Thus, at all times relevant to this proceeding, J.H. was simply an "alleged

12

father" of the child, not a presumed father under the UPA. Nor was father M.M. a presumed father. Although he asserted that he was M.A.M.'s psychological father, he never claimed to have held her out as his own or that he was otherwise entitled to the status of "presumptive father." Thus, there was no need for a paternity proceeding to determine which of two presumptive fathers should be recognized as the child's legal father.

¶ 28 Of course, a paternity proceeding may be initiated for purposes other than making a choice between two (or more) presumptive fathers. In this case, the Garfield County Department of Human Services Child Support Services Unit had opened a case in 2015 to determine the paternity of all three children. The court determined that Father was the oldest child's father, but not M.A.M.'s father. In that case, too, J.H. did not cooperate in taking a genetic test to determine whether he was the child's father despite the fact he was "made aware" of the proceeding. Eventually the court dismissed the 2015 paternity case with respect to M.A.M.

¶ 29 In October 2016, in a renewed attempt to resolve the problem of M.A.M.'s paternity, the Department filed a petition to determine whether J.H. was her father. But the Department quickly withdrew

the petition after concluding that the court did not have personal jurisdiction over J.H.

¶ 30    A few days after the Department withdrew the petition to determine M.A.M.'s paternity, the juvenile court entered the APR order. Thus, the question of M.A.M.'s paternity was never resolved.

### c. Finality of the APR Order

¶ 31    Mother argues that the APR order was not final because it did not fully resolve the rights and liabilities of the parties. But, insofar as she contends that the order did not fully resolve her own rights and liabilities, she does not explain what was left to be decided in an order that addressed her rights to visitation, parenting time, and other matters relevant to the allocation of parental responsibilities between her and father M.M. Nor did she attempt to initiate a paternity proceeding herself, as she might have done under section 19-4-107, if she believed that resolving the issue of M.A.M.'s paternity was necessary to protect her rights.

¶ 32    Insofar as mother contends that the order did not resolve the rights and liabilities of other parties, including but not limited to J.H., we conclude that she lacks standing to raise the issue. *See, e.g., People in Interest of J.A.S.*, 160 P.3d 257, 261 (Colo. App. 2007)

(one parent does not have standing to raise issues that concern only the other parent's rights).

### 4. Possibility of Revision

¶ 33   Mother argues that the APR order was not final because it was subject to revision. However, once the juvenile court entered the APR order and directed that it should be certified to the district court, jurisdiction to modify the order under sections 14-10-129 and 14-10-131, C.R.S. 2017, was transferred to the district court, leaving nothing further for the juvenile court to do. *See* § 19-1-104(6). In addition, we note that under sections 14-10-129 and 14-10-131, all orders concerning parenting time and decision-making responsibility may be modified if a sufficient showing is made that circumstances warrant a change. Nevertheless, APR orders are considered final and appealable, as recognized in C.A.R. 3.4(a).

### 5. Unresolved Issues in the Dependency and Neglect Proceeding

¶ 34   Mother contends that the APR order was not final because when it was entered, the paternity summons for J.H. was still outstanding, father M.M.'s deferred adjudication had not been addressed, and the court had not dismissed the case. We are not persuaded.

15

¶ 35    As discussed above, we conclude that under section 19-1-104(6), the entry of the APR order ended the dependency and neglect proceeding and transferred jurisdiction over the allocation of parental responsibilities to the district court. Therefore, there was no longer any need to address father M.M.'s deferred adjudication. Nor was there any need to enter an additional order to dismiss the case where the APR order served as the case-ending order.

¶ 36    As for the paternity summons, the record does not reveal whether it was still outstanding when the court entered the APR order, as mother asserts. But, even if it was, mother cites no authority for the proposition that the existence of an outstanding summons is sufficient to prevent the court from closing the case in which the summons was issued, and we are aware of no such authority.

## B. Indian Child Welfare Act

¶ 37    Mother raises an issue as to whether the provisions of the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963 (2012), and applicable Bureau of Indian Affairs regulations and guidelines for implementing ICWA were complied with by the Department and the juvenile court after she asserted that she had

16

Indian heritage. She contends that the Department failed to comply with ICWA when it failed to investigate or send notices to tribes after she and the children's maternal grandmother stated that mother had a tribal affiliation and the children's great-grandmother had been enrolled in an Indian tribe. The parties disagree as to whether we can address this issue notwithstanding our determination that the appeal is untimely. We conclude that we cannot. The untimeliness of the appeal deprives us of jurisdiction as to all of the issues raised in the appeal, including the ICWA issues.

¶ 38 However, we note that under 25 U.S.C. § 1914 (2012), a parent "may petition any court of competent jurisdiction" to invalidate an action for foster care placement or termination of parental rights upon a showing that such action violated any of several sections of ICWA, including section 1912, concerning notice to tribes. And, in *People in Interest of K.G.*, 2017 COA 153, ¶¶ 12-18, a division of this court recently concluded that in some circumstances a proceeding to allocate parental responsibilities is a child custody proceeding covered by ICWA. Thus, mother may be able to raise the issue of ICWA compliance in the juvenile court.

17

But the availability of such a collateral attack on the APR order in the juvenile court does not vest us with jurisdiction to address the ICWA issue in the first instance as part of this appeal.

## III.  Conclusion

¶ 39     The appeal is dismissed with prejudice for lack of an appealable order.

JUDGE DAILEY and JUDGE HAWTHORNE concur.