The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 25, 2021

**2021COA22**

**No. 17CA0255, *People in Interest of M.R.M.* — Juvenile Court —
Dependency and Neglect — Appeals — Final Appealable Order**

In this dependency and neglect proceeding, mother appeals

from the order dismissing the dependency and neglect proceeding

concerning her children. In an earlier opinion, a division of the

court of appeals concluded that the order from which mother

sought to appeal wasn't a final and appealable order, and that

because her notice of appeal was not filed within twenty-one days

after the entry of the order that was final and appealable, her

appeal was untimely. *See People in the Interest of M.R.M.*, 2018

COA 10. The division, therefore, dismissed mother's appeal.

The supreme court granted mother's petition for writ of

certiorari, the vacated the division's judgment, and remanded the

case for the division to reconsider the case in light of its holding in *People in the Interest of R.S.*, 2018 CO 31.

After reconsidering of mother's appeal in light of *People in the Interest of R.S.*, the division concludes that the allocation of parental responsibilities (APR) order was the final appealable order in mother's proceeding — not the order terminating the juvenile court's jurisdiction.  And because mother's notice of appeal was filed more than twenty-one days after the entry of the APR order, the division concludes that her appeal was untimely and that it, therefore, lacks jurisdiction to consider the appeal.  Accordingly, the division dismisses the appeal for lack of jurisdiction

COLORADO COURT OF APPEALS                                    **2021COA22**

Court of Appeals No. 17CA0255
Garfield County District Court No. 16JV21
Honorable Denise K. Lynch, Judge

The People of the State of Colorado,

Appellee,

In the Interest of M.R.M., M.M.M., and M.A.M., Children,

and Concerning M.M.A.,

Appellant.

APPEAL DISMISSED

Division II
Opinion by JUDGE WELLING
Dailey and Hawthorne*, JJ., concur

Announced February 25, 2021

Tari L. Williams, County Attorney, Heather K. Beattie, Assistant County
Attorney, Glenwood Springs, Colorado, for Appellee

Cassie L. Coleman, Luisa Berne, Guardians Ad Litem

Debra W. Dodd, Office of Respondent Parents' Counsel, Berthoud, Colorado, for
Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2020.

¶ 1    M.M.A. (mother) appeals from the order dismissing the dependency and neglect proceeding concerning M.R.M., M.M.M., and M.A.M. (the children).  In our original opinion on this case, we concluded that the order from which mother seeks to appeal wasn't a final and appealable order and that, because her notice of appeal wasn't filed within twenty-one days after the entry of the order that was final and appealable, her appeal was untimely.  *See People in Interest of M.R.M.*, 2018 COA 10 (*M.R.M. I*).  We dismissed mother's appeal.  *Id.* at ¶ 1.

¶ 2    The supreme court granted mother's petition for writ of certiorari, vacated our judgment, and remanded the case to us for reconsideration in light of its holding in *People in Interest of R.S.*, 2018 CO 31.  *See M.M.A. v. People in Interest of M.R.M.*, (Colo. No. 18SC101, May 21, 2018) (unpublished order).  Specifically, the supreme court asked us to address

> [w]hether a juvenile court's order terminating its jurisdiction is a final and appealable order from which an appeal may be taken; or whether an order allocating parental responsibilities automatically terminates the juvenile court's jurisdiction such that the APR order is the only order from which an appeal may be taken after entry of the allocation order.

*Id.* The parties submitted supplemental briefs concerning *R.S.* and its effect on the issue at hand.

¶ 3    After reconsideration of mother's appeal in light of *People in Interest of R.S.*, we conclude that the allocation of parental responsibilities (APR) order was the final, appealable order in mother's proceeding — not the order terminating the juvenile court's jurisdiction. Because mother's notice of appeal was filed more than twenty-one days after the entry of the APR order, her appeal was untimely and, accordingly, we lack jurisdiction to hear the appeal. Therefore, we dismiss the appeal.

## I.    Background

¶ 4    In March 2016, the Garfield County Department of Human Services (the Department) sought and received temporary custody of eleven-year-old M.R.M., six-year-old M.M.M., and three-year-old M.A.M. based on concerns that the children had been exposed to drugs, violence in the home, and an injurious environment.

¶ 5    Shortly after the children were removed from mother's home, the Department filed a petition in dependency and neglect, naming mother and M.M., who is the father of M.R.M. and M.M.M., and stepfather to M.A.M. (hereinafter father M.M.), as respondents. The

Department acknowledged that father M.M. wasn't M.A.M.'s biological father and that J.H., a resident of Florida, was suspected to be her father. A caseworker contacted J.H. in Florida and learned he had mental health issues. The caseworker then discussed the situation with J.H.'s mother, who was his primary caretaker.

¶ 6    Although the court entered an order requiring genetic testing of J.H., and the Department said that it was "in the process of conducting a genetic test to determine paternity," no genetic test results appear in the record, and J.H. was never determined to be M.A.M.'s father or named as a party to the case.

¶ 7    The court initially placed the children with their maternal grandmother. However, father M.M. moved from Florida to Colorado and sought custody of all three children soon after the case began. He said that he shared custody of the two older children with mother under a domestic relations order, and he asserted that he should have custody of M.A.M. because he was her psychological parent. The court placed the children with him, under the protective supervision of the Department, at the end of March.

¶ 8     In May, father M.M. entered into a stipulated agreement for continued adjudication under section 19-3-505(5), C.R.S. 2020, and the court adjudicated the children dependent and neglected with respect to mother after a trial. A division of this court affirmed the adjudication with respect to mother in *People in Interest of M.R.M.*, (Colo. App. No. 16CA1845, Nov. 16, 2017) (not published pursuant to C.A.R. 35(e)).

¶ 9     The court adopted treatment plans for both mother and father M.M. But a few weeks after the court approved mother's plan, father M.M. moved to modify the existing order under which he shared custody of the children with mother and to dismiss the dependency and neglect case. In support of his request for custody of M.A.M., as well as the older two children, he submitted a letter asserting that he was M.A.M.'s father because he was the only father she had ever known and that he was willing to take full responsibility for her.

¶ 10    In November, the juvenile court entered an order allocating parental responsibilities for all three children between father M.M. and mother (the APR order). The court made no findings as to whether J.H. or father M.M. was M.A.M.'s legal father. Instead, the

4

court concluded that it had jurisdiction to allocate parental responsibilities regarding M.A.M. to father M.M. under section 14-10-123(1)(d), C.R.S. 2020, which provides that a proceeding concerning the allocation of parental responsibilities may be commenced by a person other than a parent who has been allocated parental responsibilities through a juvenile court order.

¶ 11    Approximately two weeks after the court entered the APR order, the court entered an order terminating its jurisdiction and closing the case.  Mother appealed from that order and the history of that appeal is discussed *supra.*  Applying *R.S.* to mother's appeal, we reaffirm our prior holding that the APR order is the final, appealable order from which an appellant has twenty-one days to file a notice of appeal for the request to be timely.

## II.    Finality and Appealability

¶ 12    Mother argues the APR order wasn't final and appealable for five reasons.  First, she contends that the APR order can't be deemed a final, appealable order because the juvenile court didn't have jurisdiction under section 19-1-104(6), C.R.S. 2020.  Second, she argues that the juvenile court didn't have jurisdiction to enter the APR order under section 19-4-130(1), C.R.S. 2020.  Third, she

argues that the APR order wasn't final or appealable because it didn't fully resolve M.A.M.'s paternity. Fourth, she argues that the APR order wasn't final because it was subject to revision. Fifth, she contends that the APR order wasn't final because when it was entered there were still other unresolved issues in the dependency and neglect proceeding.

## A.    Law

¶ 13    Ordinarily, a final order or judgment, for purposes of appeal, is one that ends the action, leaving nothing further to be done to determine the parties' rights. *People in Interest of O.C.*, 2012 COA 161, ¶ 8, *aff'd*, 2013 CO 56.

¶ 14    Under section 19-1-109(1), C.R.S. 2020, of the Children's Code, "an appeal as provided in the introductory portion to section 13-4-102(1), C.R.S. [2020], may be taken from any order, decree, or judgment." Section 13-4-102(1) provides that the court of appeals may review the "final judgments" of district courts, including juvenile courts. In *R.S.*, the supreme court confirmed that "section 19-1-109(1) of the Colorado Children's Code authorizes appeals in dependency or neglect proceedings from 'any order' that qualifies as a 'final judgment' for purposes of section 13-4-102(1)." *R.S.*, ¶ 3.

¶ 15    Subsections 19-1-109(2)(b) and (2)(c) further authorize appeals of "order[s] terminating or refusing to terminate the legal relationship between a parent or parents and one or more of the children of such parent or parents on a petition, or between a child and one or both parents of the child," and "order[s] decreeing a child to be neglected or dependent . . . after the entry of the disposition pursuant to section 19-3-508."

¶ 16    To determine "whether an order is final for purposes of appeal, we generally ask 'whether the action of the court constitutes a final determination of the rights of the parties in the action.'" *R.S.*, ¶ 37 (quoting *Cyr v. Dist. Ct.*, 685 P.2d 769, 770 (Colo. 1984)).

¶ 17    In *R.S.*, the supreme court construed subsections 19-1-109(2)(b) and (2)(c) in conjunction with subsection 19-1-109(1) as "authoriz[ing] appeals from certain additional orders *beyond those* authorized by subsection (1)." *Id.* at ¶ 19. That is, "subsection (1) codifies a general rule of finality, and subsection[s] (2)(b) and (2)(c) provide certain exceptions to that general rule by authorizing the appeal of certain orders from dependency or neglect proceedings that would not otherwise be considered final." *Id.* at ¶ 20.

### B. Jurisdiction Under Section 19-1-104(6)

¶ 18    Subsection 19-1-104(6) authorizes a juvenile court to enter an APR order for a child who is the subject of a dependency and neglect proceeding if requested to do so by a party to the case and if no child custody action concerning the same child is pending in a district court.  Section 19-1-104(6) further provides that, following the entry of such an order, the court shall file a certified copy of the order in the county where the child permanently resides, and, thereafter, such order "shall be treated in the district court as any other decree issued in a proceeding concerning the allocation of parental responsibilities."

¶ 19    Thus, by entering an APR order as authorized by section 19-1-104(6) and ordering that a copy of the order be filed in the district court of the county where the child is to reside, the juvenile court ends the dependency and neglect proceeding and transfers jurisdiction over the child to the district court.  That is, an APR order determines the rights of the parties and ends the proceeding.  *See R.S.*, ¶¶ 36-38.  Such an APR order is final and appealable.  *See People in Interest of E.C.*, 259 P.3d 1272, 1276 (Colo. App. 2010) (entry of permanency planning order allocating parental

8

responsibilities to aunt, followed by transfer of jurisdiction to the district court, ended the dependency and neglect proceedings; thus, the permanency planning order was a final and appealable order); *see also* C.A.R. 3.4(a) (expressly recognizing an order allocating parental responsibilities pursuant to section 19-1-104(6) as an appealable order).

¶ 20 Mother contends that the APR order can't be deemed a final, appealable order because the juvenile court didn't have jurisdiction to make the findings needed to grant APR to a nonparent and, indeed, didn't have jurisdiction to enter an APR order at all for M.A.M. She argues that because the court hadn't adjudicated M.A.M. dependent and neglected with respect to her father, J.H., and the adjudication of the two older children with respect to father M.M. was still in "deferred" status, the APR order was invalid.

¶ 21 However, the question before us isn't whether the court had jurisdiction to enter the order, but, rather, whether the order was final and appealable. Even an order entered without jurisdiction may be a final, appealable order if it ends the action, leaving nothing further to be done to determine the rights of the parties. *See, e.g., People in Interest of S.T.,* 2015 COA 147 (appeal from APR

order entered after trial court found that the allegations of dependency and neglect petition weren't proven as to one parent; order vacated for lack of subject matter jurisdiction).

¶ 22 Under *R.S.*, *E.C.*, and C.A.R. 3.4(a), an APR order entered under subsection 19-1-104(6) is final and appealable. And because mother didn't file a timely appeal from that order, we must dismiss the appeal.

### C. Jurisdiction Under Section 19-4-130(1)

¶ 23 Citing *S.T.*, mother also contends that "without commencing a paternity action, the juvenile court did not have independent jurisdiction under the Uniform Parentage Act to enter an order allocating parental responsibilities." Here, too, we note that the issue before us isn't whether the court had jurisdiction to enter an APR order, but whether the APR order under the circumstances of this case was final and appealable, and whether mother filed a timely appeal from that order. Having concluded that the APR order was final and appealable, and that mother's appeal wasn't timely, our inquiry is at an end because we lack appellate jurisdiction. And this is so even when, as here, the issue being raised on appeal is a challenge to the subject matter jurisdiction of

10

the trial court. *Cf. Garcia v. Kubosh*, 377 S.W.3d 89, 107 n.41 (Tex. App. 2012) ("And when a party attempts to challenge a judgment or order but fails to timely file a notice of appeal, we generally dismiss the appeal for lack of appellate jurisdiction regardless of whether the appeal involves a challenge to the trial court's subject matter jurisdiction.").

### D. Paternity and Finality

¶ 24    Mother argues that the APR order wasn't a final, appealable order because it didn't fully resolve the rights and liabilities of the parties as to paternity, support, and parental responsibilities with respect to M.A.M. We disagree.

### 1. Legal Principles

¶ 25    Under the Uniform Parentage Act (UPA), sections 19-4-101 to -130, C.R.S. 2020, a man is presumed to be the natural father of a child if, as relevant here, "genetic tests or other tests of inherited characteristics have been administered . . . and the results show that the alleged father is not excluded as the probable father and that the probability of his parentage is ninety-seven percent or higher." § 19-4-105(1)(f), C.R.S. 2020. A presumption of paternity may arise under other circumstances as well, as provided by

section 19-4-105(1)(a)-(e). For example, a presumption of paternity arises if, while the child is under the age of majority, a man receives a child into his home and openly holds out the child as his natural child. § 19-4-105(1)(d).

¶ 26     If two or more presumptions of paternity arise which conflict with each other, and none has been rebutted by clear and convincing evidence, "the presumption which on the facts is founded on the weightier considerations of policy and logic controls." § 19-4-105(2)(a); *People in Interest of J.G.C.*, 2013 COA 171, ¶ 22.

¶ 27     Section 19-4-107, C.R.S. 2020, addresses who may bring an action under the UPA, for what purpose, and when. As relevant here, a child's natural mother may bring an action to determine the existence of the father and child relationship even if the child has no presumed father. *See* § 19-4-107(3).

¶ 28     If a paternity issue arises in a dependency and neglect proceeding, a paternity action may be joined with the dependency and neglect proceeding to resolve the issue. *J.G.C.*, ¶ 10. In that situation, the juvenile court must follow the procedures outlined in the UPA, as its failure to do so will deprive the court of subject

12

matter jurisdiction to decide paternity. *Id.* at ¶ 11. As relevant here, the UPA provides that each man presumed to be the father of a child and each man alleged to be the natural father must be made a party to the paternity proceeding, or, if not subject to the personal jurisdiction of the court, must be given notice of the action and an opportunity to be heard. § 19-4-110, C.R.S. 2020; *J.G.S.*, ¶ 12.

### 2. Efforts to Determine M.A.M.'s Paternity

¶ 29    As an initial matter, we note that M.A.M. had no presumed father. Although mother alleged that J.H. was M.A.M.'s biological father, and there are indications in the record that J.H. had actual notice of the dependency and neglect proceeding through communications with the caseworker, he didn't appear in the case; he didn't seek a relationship with the child; and his biological relationship to the child was never established. Thus, at all times relevant to this proceeding, J.H. was simply an "alleged father" of the child, not a presumed father under the UPA. Nor was father M.M. a presumed father. Although he asserted that he was M.A.M.'s psychological father, he never claimed to have held her out as his own or that he was otherwise entitled to the status of "presumptive father." Thus, there was no need for a paternity

13

proceeding to determine which of two presumptive fathers should be recognized as the child's legal father.

¶ 30 Of course, a paternity proceeding may be initiated for purposes other than making a choice between two (or more) presumptive fathers. In this case, the Department's Child Support Services Unit had opened a case in 2015 to determine the paternity of all three children. The court determined that father M.M. was the oldest children's father, but not M.A.M.'s father. In that case, too, J.H. didn't cooperate in taking a genetic test to determine whether he was the child's father despite the fact he was "made aware" of the proceeding. Eventually the court dismissed the 2015 paternity case with respect to M.A.M.

¶ 31 In October 2016, in a renewed attempt to resolve the problem of M.A.M.'s paternity, the Department filed a petition to determine whether J.H. was her father. But the Department quickly withdrew the petition after concluding that the court didn't have personal jurisdiction over J.H.

¶ 32 A few days after the Department withdrew the petition to determine M.A.M.'s paternity, the juvenile court entered the APR order. Thus, the question of M.A.M.'s paternity was never resolved.

### 3. *R.S.*, Finality, and Appealability

¶ 33    The supreme court addressed whether the dismissal of a single parent from a petition in dependency or neglect based on a jury verdict is a final, appealable order. *R.S.*, ¶¶ 2-3. The court first concluded that, generally, section 19-1-109(1) authorizes the appeal from any order that is a "final determination" under section 13-4-102(1) — that is, any order that is a final determination of the rights of the parties or that ends the action. *See id.* at ¶ 37 (quoting *Cyr*, 685 P.2d at 770). And it held that subsections 19-1-109(2)(b) and (2)(c) are two exceptions to this general rule established in section 19-1-109(1).

¶ 34    Applying this holding, the supreme court concluded that the order dismissing father M.M. from the petition in dependency and neglect wasn't final because it "was not 'a final determination of the rights' of all of the parties to the action, nor did it 'end[] the particular action in which it [was] entered." *Id.* at ¶ 38 (quoting *Cyr*, 685 P.2d at 770). Rather, "after entering the order dismissing [father M.M.], the [juvenile] court adjudicated R.S. as dependent or neglected ('in regard to' Mother)" and the "court thus continued to exercise jurisdiction over the child and Mother, adopted a treatment

15

plan for Mother, and ordered the case to proceed with Mother maintaining custody of [the child] under the Department's supervision." *Id.* Accordingly, the court held, this order didn't meet section 19-1-109(1)'s general rule for finality and appealability.

¶ 35     Under section 19-1-109, in a dependency and neglect proceeding, a post-dispositional order that neither terminates parental rights nor declines to terminate them generally doesn't end the proceeding and isn't deemed a final, appealable order. *See, e.g.*, *E.O. v. People*, 854 P.2d 797, 801 (Colo. 1993) (order approving permanency plan that didn't effectuate any change in permanent custody or guardianship or terminate parental rights held not final and appealable; order expressly contemplated further court proceedings).

### 4.     Finality of the APR Order

¶ 36     Invoking C.R.C.P. 54(b), mother argues that the APR order wasn't final because it didn't fully resolve the rights and liabilities of all of the parties. But, insofar as she contends that the order didn't fully resolve her own rights and liabilities, she doesn't explain what was left to be decided in an order that addressed her rights to visitation, parenting time, and other matters relevant to the APR

between her and father M.M. Nor did she attempt to initiate a paternity proceeding herself, as she might have done under section 19-4-107, if she believed that resolving the issue of M.A.M.'s paternity was necessary to protect her rights.

¶ 37 Mother also contends that the order didn't resolve the rights and liabilities of J.H., the "alleged father" of M.A.M. Rule 54(b), however, refers to the rights and liabilities of "parties," and J.H. wasn't a party. Although J.H. was identified as the alleged father of one of the children, he wasn't ever served with a summons and the juvenile court never obtained personal jurisdiction over him. And because J.H. wasn't a party, whether there were outstanding issues related to him doesn't affect finality under Rule 54(b).

### E. Possibility of Revision

¶ 38 Mother argues that the APR order wasn't final because it was subject to revision. However, once the juvenile court entered the APR order and directed that it should be certified to the district court, jurisdiction to modify the order under sections 14-10-129 and 14-10-131, C.R.S. 2020, was transferred to the district court, leaving nothing further for the juvenile court to do. *See* § 19-1-104(6). In addition, we note that, under sections 14-10-129 and

14-10-131, all orders concerning parenting time and decision-making responsibility may be modified if a sufficient showing is made that circumstances warrant a change. Nevertheless, APR orders are considered final and appealable, as recognized by C.A.R. 3.4(a). *See also R.S.*, ¶ 29.

F.     Unresolved Issues in the Dependency and Neglect Proceeding

¶ 39     Mother contends that the APR order wasn't final because when it was entered the paternity summons for J.H. was still outstanding, father M.M.'s deferred adjudication hadn't been addressed, and the court hadn't dismissed the case. We aren't persuaded.

¶ 40     As discussed above, we conclude that under section 19-1-104(6), the entry of the APR order ended the dependency and neglect proceeding and transferred jurisdiction over the allocation of parental responsibilities to the district court. Therefore, there was no longer any need to address father M.M.'s deferred adjudication. Nor was there any need to enter an additional order to dismiss the case where the APR order served as the case-ending order.

¶ 41     As for the paternity summons, the record doesn't reveal whether it was outstanding when the court entered the APR order,

as mother asserts.  But, even if it was, mother cites no authority for the proposition that the existence of an outstanding summons is sufficient to prevent the court from closing the case in which the summons was issued, and we are aware of no such authority.

### III.    Timeliness

¶ 42    "Unless a notice of appeal is timely filed, the court of appeals lacks jurisdiction to hear the appeal." *People in Interest of A.J.*, 143 P.3d 1143, 1146 (Colo. App. 2006).  Because an appellate court must satisfy itself that it has jurisdiction to hear an appeal, it may raise jurisdictional defects like untimeliness nostra sponte.  *People v. S.X.G.*, 2012 CO 5, ¶ 9.

¶ 43    Once a final and appealable judgment, decree, or order has been entered in a dependency and neglect proceeding, a party who wishes to appeal must file a notice of appeal within twenty-one days.  C.A.R. 3.4(b)(1).

¶ 44    Here, the juvenile court entered an APR order, and ordered that the APR order be certified into an existing custody proceeding in the district court as to the older two children and certified into a new domestic relations case as to the youngest child.  Under *R.S.*

and *E.C.*, the APR order was appealable.  However, mother didn't appeal from that order.

¶ 45     After the court entered the APR order, the Department moved to terminate the jurisdiction of the juvenile court and close the dependency and neglect case.  The Department reported that the APR order had been certified into the existing domestic relations case as to the older two children, and into a new domestic relations case as to the youngest child, as the court had directed.  The Department argued that there were no further child welfare issues in the dependency and neglect proceeding that required intervention by the court, and that it was in the children's best interests that the court terminate its jurisdiction and close the case.  The court agreed and entered an order that purportedly terminated its jurisdiction and closed the dependency and neglect case.  That is the order from which mother appeals.

¶ 46     Because mother's notice of appeal was filed more than twenty-one days after the entry of the APR order, we conclude that her appeal was untimely, and that, accordingly, we lack jurisdiction to hear the appeal.  However, mother argues that the juvenile court's order terminating its jurisdiction was the final, appealable

20

order from which she had twenty-one days to file a notice of appeal because it closed the dependency and neglect proceeding and ended the jurisdiction of the juvenile court. Further, she contends that section 19-1-109 is evidence of the legislature's intent to expand appellate rights, rather than limit them, and thus the termination order is final and appealable. Consequently, she argues that her notice of appeal was timely because it was filed within twenty-one days of the juvenile court's entry of the termination order. Therefore, we have jurisdiction over her appeal and must address the merits of her contentions.

¶ 47 After review of the supreme court's opinion in *R.S.*, we conclude that that the APR order was final and appealable under section 19-1-109(1) because it resolved the issue at hand — the parental responsibilities of mother's three children — and ended the dependency and neglect proceeding and transferred jurisdiction over the children to the district court. Thus, the juvenile court's order terminating its jurisdiction is superfluous. Mother's appeal was untimely because she didn't file her notice of appeal within twenty-one days of the juvenile court's entry of the APR order.

Thus, we lack jurisdiction over her appeal and must dismiss the case.

## IV.   Indian Child Welfare Act

¶ 48   Mother raises an issue as to whether the Department and the juvenile court complied with the provisions of the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963, and applicable Bureau of Indian Affairs regulations and guidelines for implementing ICWA after she asserted that she had Indian heritage. She contends that the Department failed to comply with ICWA when it failed to investigate or send notices to tribes after she and the children's maternal grandmother stated that mother had a tribal affiliation and the children's great-grandmother had been enrolled in an Indian tribe. The parties disagree as to whether we can address this issue notwithstanding our determination that the appeal is untimely. We conclude that we can't. The untimeliness of the appeal deprives us of jurisdiction as to all of the issues raised in mother's appeal, including the ICWA issues.

¶ 49   However, we note that under 25 U.S.C. § 1914, a parent "may petition any court of competent jurisdiction" to invalidate an action for foster care placement or termination of parental rights upon a

22

showing that such action violated any of several sections of ICWA, including section 1912, concerning notice to tribes. And, in *People in Interest of K.G.*, 2017 COA 153, ¶¶ 12-18, a division of this court concluded that in some circumstances a proceeding to allocate parental responsibilities is a child custody proceeding covered by ICWA. Thus, mother may be able to raise the issue of ICWA compliance in the juvenile court. But the availability of such a collateral attack on the APR order in the juvenile court doesn't vest us with jurisdiction to address the ICWA issue in the first instance as part of this appeal.

## V. Conclusion

¶ 50    The appeal is dismissed with prejudice.

JUDGE DAILEY and JUDGE HAWTHORNE concur.