25CA0080 Peo in Interest of BP 07-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0080
Jefferson County District Court No. 23JV30038
Honorable Lindsay VanGilder, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of B.P., a Child,

and Concerning S.P.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE YUN
Tow and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

---

Kimberly Sorrells, County Attorney, Claire M. Czajkowski, Assistant County Attorney, Golden, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     S.P. (mother) appeals the judgment allocating parental responsibilities for B.P. (the child) to S.A. and P.F. (the intervenors), who served as the child's physical custodians for much of the case. We affirm.

## I.     Background

¶ 2     After receiving reports that the child tested positive for illicit substances at birth, the Jefferson County Division of Children, Youth and Families (the Department) worked with mother to place both her and the child at a residential treatment facility. However, after mother was discharged due to behavioral concerns, the Department filed a petition in dependency and neglect, citing concerns about mother's substance abuse and mental health.

¶ 3     The juvenile court granted the Department's request for temporary legal custody of the child, who was then placed with a family friend. The juvenile court also adjudicated the child dependent and adopted a treatment plan for mother. The treatment plan required her to (1) meet the child's needs, including the need for permanency; (2) address her mental health issues; and (3) maintain a substance-free lifestyle.

¶ 4     After two unsuccessful placements, the child was moved to the home of the intervenors.  Approximately ten months later, the child was returned to mother's care.  Mother relapsed shortly thereafter, and the child was returned to the care of the intervenors.

¶ 5     The Department then moved for an allocation of parental responsibilities (APR).  Following an evidentiary hearing, the juvenile court awarded sole decision-making responsibility and primary custody to the intervenors and awarded supervised parenting time of up to four hours per week to mother.  The court also ordered that mother could not file a motion to modify parenting time until she provided proof that she was receiving ongoing substance use treatment and trauma therapy.  Finally, the court directed the Department to file a certified copy of the order in the district court and closed the dependency and neglect case.

## II.     Mother's Parenting Time

¶ 6     Mother asserts that the juvenile court erred by imposing conditions on her ability to file a motion to modify parenting time in the future.  We discern no basis for reversal.

### A.  Applicable Law and Standard of Review

¶ 7     The Children's Code authorizes a juvenile court to enter an
APR to a non-relative in a case involving a dependent and neglected
child.  § 19-1-104(5)-(6), C.R.S. 2024; *People in Interest of E.Q.*,
2020 COA 118, ¶ 10; *see also* § 19-3-702(4)(a)(V), C.R.S. 2024.
When doing so, a juvenile court must consider the legislative
purposes of the Children's Code under section 19-1-102, C.R.S.
2024.  *See People in Interest of A.S.L.*, 2022 COA 146, ¶ 12.  The
overriding purpose of the Children's Code is to protect a child's
safety and welfare by providing procedures that serve the child's
best interests.  *L.G. v. People*, 890 P.2d 647, 654 (Colo. 1995).  The
court is obligated to allocate parental responsibilities in accordance
with the child's best interests.  *L.A.G. v. People in Interest of A.A.G.*,
912 P.2d 1385, 1391 (Colo. 1996).

¶ 8     The APR is a matter within the juvenile court's discretion.  *See*
*In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63,
¶ 15.  A juvenile court abuses its discretion when its decision is
manifestly arbitrary, unreasonable, or unfair, or is based on a
misapplication of the law.  *People in Interest of M.W.*, 2022 COA 72,
¶ 12.  It is for the court, as the trier of fact, to determine the

sufficiency, probative effect, and weight of the evidence, and to assess the credibility of witnesses. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). And when the juvenile court's findings have record support, its resolution of conflicting evidence is binding on review. *B.R.D.*, ¶ 15. But whether the court applied the correct legal standard in making its findings is a question of law that we review de novo. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10.

## B.    Analysis

¶ 9    The juvenile court ordered mother "to provide proof of ongoing substance use treatment and trauma therapy before petitioning the [c]ourt for additional family time with [the child]." Mother asserts that this language erroneously restricted the district court's ability to modify the APR order. We disagree.

¶ 10    Once a juvenile court enters an APR order in a dependency and neglect proceeding, it may require that a certified copy of the order be filed in the district court, which ends the dependency and neglect proceeding and transfers jurisdiction over the child to the district court. *People in Interest of M.R.M.*, 2021 COA 22, ¶¶ 19, 40; *see also* § 19-1-104(6). At that point, any future proceedings,

including modifications of the APR, are governed by the Uniform Dissolution of Marriage Act (UDMA). *See N.G.G.*, ¶ 26. The UDMA states that, with exceptions not applicable here, "the court may make or modify an order granting or denying parenting time rights *whenever* such order or modification would serve the best interests of the child." § 14-10-129(1)(a)(I), C.R.S. 2024 (emphasis added). Thus, any attempt to prospectively limit a modification would be of no effect because section 14-10-129 specifically governs the district court's authority to modify APR orders.[1]

¶ 11    We therefore conclude that the APR order does not prevent the district court from granting, if appropriate, a modification to the APR.

### III.    Treatment Plan Compliance and Fitness Within a Reasonable Time

¶ 12    Mother also contends that the juvenile court erred by determining that she did not comply with her treatment plan and could not become fit within a reasonable time. We discern no error.

---

[1] For the same reason, we also reject mother's assertion that the juvenile court's order "effectively introduced the best interests-standard from the Children's Code into a proceeding governed by the UDMA."

¶ 13    Although a juvenile court must find that a parent cannot become fit within a reasonable time before it may terminate parental rights, *see* § 19-3-604(1)(c)(III), C.R.S. 2024, no such finding is required before a court may allocate parental responsibilities.  In fact, while parental unfitness "clearly constitutes a compelling reason not to return a child home," parental deficiencies less serious than unfitness can still provide a compelling reason to deny the child's return when considered in light of the child's physical, mental, and emotional conditions and needs.  *People in Interest of C.M.*, 116 P.3d 1278, 1283 (Colo. App. 2005).  Thus, the fact that a parent may become fit within a reasonable time is not dispositive of whether an APR is in the child's best interests, particularly if there are other compelling reasons not to return a child to the parent.

¶ 14    Though not required, the juvenile court found that mother was unfit at the time of the APR hearing.  While the court did not make any specific findings about mother's treatment plan compliance or ability to become fit within a reasonable time, the court did review each of mother's treatment plan objectives and expressed concerns regarding her stability, mental health, and substance use.  The

6

court found that mother needed to focus on her trauma and sobriety in the long term "in order to be able to be present for [the child] in a meaningful or healthy way."

¶ 15    The record supports these findings. Both ongoing caseworkers testified that they had concerns about mother's stability. Their concerns were based, in part, on mother's verbally aggressive behavior that resulted in conflicts with various supportive individuals and professionals, including (1) staff at a drug testing facility; (2) staff at the family time supervision facility; (3) the guardian ad litem; (4) a caseworker; (5) the child's pediatrician; (6) the maternal grandfather; (7) a family friend; (8) the intervenors; and (9) mother's alcoholics anonymous sponsor. Due to the ongoing discord, several of these individuals declined to continue supervising mother's family time. And the child's pediatrician refused to continue treating the child. The caseworkers expressed concern about mother's pattern of high-conflict behavior and its impact on her and the child's stability.

¶ 16    One caseworker also expressed concerns about mother's ability to control her emotions. Mother's therapist testified that mother had experienced trauma, which materialized as anger and

fear, and that they were working to prepare mother for trauma therapy. While her therapist acknowledged the progress mother had made, she also explained that the process "takes a while" and there was no way to know when mother would be ready to begin trauma therapy.

¶ 17    Finally, several witnesses described mother's history of substance abuse, including that mother relapsed twice during the case while the child was in her care. The first relapse occurred approximately eight months after the petition was filed, during a time when mother was exercising unsupervised family time without authorization. The second relapse occurred about nine months later, after the child had returned home. One of the intervenors testified about the unsanitary conditions of mother's residence during her second relapse and described finding the then-eighteen-month-old child with a vape pen in her mouth.

¶ 18    Mother correctly asserts that the record contains some evidence of her treatment plan compliance. For example, she (1) maintained contact with the caseworkers; (2) attended family time; (3) worked with her mental health provider for more than four months prior to the APR hearing; (4) had a support network at the

time of the hearing; (5) engaged in treatment for substance use; and (6) provided consistent, negative drug tests for four months before the hearing.  However, as one caseworker summarized, the case was open for almost twenty-two months and, during that time, mother (1) was in several different treatment facilities with only one successful completion; (2) lost supportive individuals due to conflicts; and (3) experienced two relapses while the child was in her care.  The caseworker explained that, for mother to be successful with her treatment plan, she needed to demonstrate compliance over time.  Further, after the close of evidence but prior to the entry of the APR judgment, the Department submitted documentation that mother had tested positive for cocaine two weeks earlier and missed three subsequent drug tests.

¶ 19    Mother asserts that, had the case remained open, she could have participated in additional treatment to reunite with the child. But mother had twenty-two months to engage in treatment and, at the time of the APR judgment, still suffered from the same concerns that precipitated the petition.  A reasonable time is not an indefinite time, and it should be determined by considering the child's physical, mental, and emotional conditions and needs.  *People in*

*Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006). And where, as here, a child is under six years old, the court must also consider the expedited permanency planning provisions, which require that the child be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, C.R.S. 2024.

¶ 20 Because the juvenile court's findings are supported by the record, and because the court applied the correct legal standards, we discern no error.

## IV. Disposition

¶ 21 The judgment is affirmed.

JUDGE TOW and JUDGE SULLIVAN concur.