**The PEOPLE of the State of Colorado,**
**Petitioner–Appellee,**

**In the Interest of E.C., Child,**

**and**

**Concerning S.C., Respondent–Appellant.**

**No. 10CA1117.**

Colorado Court of Appeals,
Div. II.

Oct. 28, 2010.

Gradisar, Trechter, Ripperger & Roth, David A. Roth, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner–Appellee.

Theodore (Ted) J. Malouff, Pueblo, Colorado, for Respondent–Appellant.

Opinion by Judge GABRIEL.

In this dependency and neglect case, S.C. (father) appeals from an order allocating parental responsibilities for his daughter, E.C. (child), to the child's maternal aunt, J.H. (aunt). Because we cannot determine from the record whether the Pueblo County Department of Social Services (Department) complied with the requirements of the Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901–1963 (2010) (ICWA), we remand for further proceedings.

## I. Background

This case began in August 2009 as a result of the Department's investigation into the circumstances surrounding I.M.'s (mother's) visit to the Family Services Center. Mother informed the Center's staff that father had severely beaten and abused her in Texas, which resulted in her fleeing to Pueblo with the child to live with aunt. Mother said she had suffered domestic violence at father's hands for the last nineteen years and that father kept her and the child isolated and would not allow the child to attend school.

Mother also reported that she had fourteen children, lost her parental rights to four of them, and was not sure where the rest were. In fact, further investigation disclosed that mother had previously lost her parental rights to six, not four, of her children.

A case manager from the Family Services Center accompanied mother to district court, where mother obtained a civil protection order against father. Mother also requested from the district court an allocation of parental responsibilities for the child. See § 14–10–123(1)(a)(II), C.R.S.2010.

Thereafter, mother had difficulties with aunt, and she and child left aunt's home and moved to a YWCA. They left the YWCA after several days, however, and resumed living with father, notwithstanding the existing protection order. The Department then filed a motion in a separate district court (D & N court) proceeding, seeking emergency custody of E.C. because of safety concerns. The D & N court granted temporary custody to the Department, which placed the child in a foster home.

A shelter hearing was held in the D & N court on September 9, 2009. At this hearing, the parents informed the court that the child may be a member of, or may have been eligible for membership in, an Indian tribe. The Department was instructed to investigate in accordance with the ICWA. In addition, the court authorized, and the Department subsequently filed, a dependency and neglect petition. Finally, the court found that (1) it would not be in the child's best interests to be returned to the parents' custody because return would "subject the child to a substantial and immediate danger or threat of such danger," (2) out-of-home placement was appropriate "in order to prevent imminent physical damage or harm to the child," and (3) reasonable efforts had been made to prevent or eliminate the need for removal of the child. Thus, the court ordered the parents to cooperate with the Department; submit to urinalysis testing and a domestic violence evaluation; attend supervised visits with the child three times per week; arrange for a determination of foster care fees; and provide information regarding relatives so

that the Department could assess potential placements for the child.

On October 5, 2009, father failed to appear for a pretrial conference in the D & N court, and that court adjudicated the child dependent and neglected as to father by default. On October 19, 2009, mother stipulated to the dependency and neglect petition, and the child was adjudicated dependent and neglected as to her as well. At that time, the parties agreed that aunt would be added to the case as a special respondent.

The D & N court then approved a treatment plan that, among other things, required the parents to cooperate with the Department by signing releases for all treating agencies and by keeping in contact with the caseworker. In addition, father was required to comply with urinalysis testing, participate in any recommended substance-abuse treatment, and remain substance-free. The parents were also to participate in parenting classes, attend therapy sessions, and report immediately any changes in their residences.

On October 23, 2009, the district court, which still had mother's petition for an allocation of parental responsibilities before it, entered an order noting the pending D & N court proceeding and certifying (i.e., transferring) the allocation of parental responsibilities issue to the D & N court, which had exclusive jurisdiction to decide custody issues. *See* § 19–1–104(4)(a), C.R.S.2010; C.R.J.P. 4.4; *see also People in Interest of D.C.*, 851 P.2d 291, 293 (Colo.App.1993) (dissolution of marriage statutes cease to apply when a petition for custody filed pursuant to section 14–10–123, C.R.S.2010, is certified to be determined as part of a pending dependency and neglect action).

The parents' compliance with their treatment plan was poor. They did not communicate with the Department or return messages. They did not enroll or participate in most of the required services. They also continued to violate the existing restraining order, and mother admitted that she had resumed living with father. The parents did, however, actively participate in supervised visitation with the child.

In December 2009, the Department filed a motion in the D & N court for a permanency planning hearing. In that motion, the Department alleged that the child could not be returned home at that time and that there was no substantial probability that she could be returned home within six months. A hearing was scheduled for February 5, 2010, and notice of this hearing was sent to the parents. Thereafter, however, the parents' efforts to comply with their treatment plan improved, and the D & N court continued the hearing to May 7, 2010.

On March 31, 2010, the Department issued a report recommending that the child be placed with aunt and her husband. The report also specified separate visitation schedules for each parent. Although the report stated that mother and father both agreed to this arrangement, it contained a notation that father "did not sign the agreement due to his absence at a scheduled visit on 3/27/10."

The D & N court conducted a permanency planning hearing on May 7, 2010. At this hearing, father testified that he objected to placement of the child with aunt and that he wanted custody of the child returned to him. After hearing testimony from father and the caseworker, the court concluded that aunt should receive an allocation of parental responsibilities for the child, although father should be allowed visitation. Pursuant to aunt's request and under section 19–1–104(6), C.R.S.2010, the D & N court further ordered that the case be transferred back to the district court, and the court certified its order as a custody-allocation of parental responsibilities order in the domestic relations case. *See* § 19–1–104(6) (when a certified copy of a juvenile court's order allocating parental responsibilities is filed in the district court, the order "shall be treated in the district court as any other decree issued in a proceeding concerning the allocation of parental responsibilities"); C. R.J. P. 4.4(c) (when the juvenile court enters an order pursuant to a certification from a district court, a certified copy of that order is filed in the certifying (i.e., district) court, and the order "shall thereafter be the order of the certifying court"); *see also* § 14–10–

123(1)(d), C.R.S.2010. The D & N court action was then closed.

Father now appeals.

## II. Final and Appealable Order

We first address and reject the Department's contention that the D & N court's order is not final and appealable.

■ Here, father's parental rights were not terminated. Rather, his appeal is from a permanency planning order. An order or judgment is generally considered final and appealable if it ends the particular action, leaving nothing further to be done to determine the rights of the involved parties completely. *People in Interest of H.R.*, 883 P.2d 619, 620 (Colo.App.1994). A permanency plan does not constitute a final order when it does not "effectuate any change in permanent custody or guardianship or terminate parental rights." *Id.* at 621. Here, however, the order did so. Moreover, the D & N court's order and transfer of jurisdiction back to the district court ended the proceedings in the D & N court.

This case is thus distinguishable from *H.R.*, 883 P.2d at 620–21. There, the court retained jurisdiction to review further the issues of the parent's compliance with the treatment plan and the temporary custodial and placement orders. *See id.* The court did not do so here.

For these reasons, we conclude that the D & N court's order is final and appealable.

## III. D & N Court's Findings

Father next contends that (1) the D & N court's conclusion that the Department had made reasonable efforts to return the child home is not supported by the evidence; (2) the court's finding that he agreed to placement of the child with aunt is erroneous; (3) the court did not make the findings required by section 19–3–702(3.5), C.R.S.2010, and, in any event, there is no evidence in the record to support such findings; and (4) father substantially complied with his treatment plan. We reject each of these arguments in turn.

### A. Reasonable Efforts

■ With respect to father's assertion that the D & N court erred in finding that the Department had made reasonable efforts to return the child home, we conclude that father waived this issue by not bringing any perceived deficiency in the Department's efforts to the D & N court's attention.

The Department must make " 'reasonable efforts' to prevent the placement of abused and neglected children out of the home and to reunify the family whenever appropriate." § 19–3–100.5(1), C.R.S.2010; *see* §§ 19–1–103(89) (defining "reasonable efforts"), 19–3–604(2)(h) (in determining parental unfitness in the context of a petition for termination of parental rights, the court shall consider the reasonable efforts by child-caring agencies to rehabilitate the parents), C.R.S. 2010; *L.L. v. People*, 10 P.3d 1271, 1275 (Colo.2000); *People in Interest of A.J.H.*, 134 P.3d 528, 533 (Colo.App.2006). Among the efforts required is the provision of necessary and appropriate services, as determined by an assessment and case plan for the family. § 19–3–208, C.R.S.2010.

■ It is a parent's responsibility, however, to assure compliance with and success of his or her treatment plan. *People in Interest of C.T.S.*, 140 P.3d 332, 335 (Colo.App. 2006). Accordingly, the parent "must bring any perceived deficiency in the department's efforts to rehabilitate and reunite the family to the trial court's attention." *People in Interest of D.P.*, 160 P.3d 351, 355 (Colo.App. 2007).

Here, father did not assert that the Department's efforts to rehabilitate and reunite the family were deficient, nor did he bring the matter to the D & N court's attention in any other way. Thus, we conclude that father waived his right to raise this issue on appeal. *Id.* at 355–56; *accord People in Interest of T.M.W.*, 208 P.3d 272, 275 (Colo. App.2009).

### B. Agreement to Placement with Aunt

■ Father next argues that the D & N court's written finding that he had agreed to placement of the child with aunt was errone-

ous. We conclude that the written finding, although erroneous, was harmless.

The court's written order states, "The parties inform the Court that they have reached an agreement as to the issue of [a] permanency plan." As noted above, however, father did not sign the agreement because he was absent from a visit.

Notwithstanding the foregoing, the question of the propriety of permanent placement with aunt proceeded to a hearing at which father testified and made clear that he wanted custody of the child returned to him and that he objected to such placement. Moreover, in its oral ruling, the court did not state that father had agreed to the arrangement but rather made findings as to why placement with father would not be in the child's best interests.

For these reasons, we conclude that the error in the D & N court's written findings was harmless and did not impact father's due process rights.

## C. Section 19–3–702(3.5) Findings

Father alleges that the court did not make the findings required by section 19–3–702(3.5) and that, in any event, there is no record support for such findings. We disagree.

As pertinent here, section 19–3–702(3.5) provides:

> At any permanency hearing conducted by the court, the court shall make determinations as to the following:
>
> (a) Whether procedural safeguards to preserve parental rights have been applied in connection with any change in the child's placement or any determination affecting parental visitation of the child; [and]
>
> (b) Whether reasonable efforts have been made to finalize the permanency plan that is in effect at the time of the permanency hearing.

Section 19–3–702(3.5)(a)–(b), C.R.S.2010.

■ Although this statute requires the court to "make determinations" regarding these two issues, the lack of express findings pursuant to section 19–3–702(3.5)(a) does not in itself establish that the D & N court failed to observe procedural safeguards to protect father's rights. *See People in Interest of M.B.,* 70 P.3d 618, 625 (Colo.App.2003).

■ Regarding reasonable efforts to finalize the permanency plan, the Department's March 2010 report indicated that the permanency plan had changed and that the goal was no longer to have the child return home. Instead, the plan was to place the child with aunt and her husband, with father to have visitation rights. Although father disputes that he agreed to this plan, it was nevertheless adopted by the court on March 31, 2010. In addition, although the court did not explicitly find that reasonable efforts had been made to finalize the permanency plan, the caseworker's testimony established such efforts. Thus, the caseworker testified regarding the plan to allocate parental responsibilities to aunt, father's lack of compliance with the restraining order, and his lack of progress on his treatment plan. The caseworker further informed the court that despite the family's fear of father, aunt had agreed to allow visitation with father, as long as the visits would not occur in her home. And the caseworker described other discussions that she had had with aunt regarding the child's placement.

Thus, the record reflects that the Department had, in fact, made reasonable efforts to finalize the placement of the child with aunt. Accordingly, we perceive no reversible error in the court's lack of specific oral findings.

## D. Treatment Plan

Father also argues that he substantially complied with his treatment plan. Again, we disagree.

■ The pleadings filed in this case, as well as the testimony presented at the permanency planning hearing, all demonstrated that father made minimal efforts to comply with his treatment plan. He was consistently out of contact with the Department; he continually violated the restraining order; he had not completed the required psychological evaluation; he was inconsistent with his attendance at mental health sessions and was discharged for noncompliance; and he had

missed visitation for the preceding eight weeks.

Thus, the record does not show compliance with the treatment plan. Indeed, it shows the opposite. Accordingly, we reject father's argument.

## IV. Fitness of Aunt

■ Father next contends that the record does not support the court's conclusion that aunt and her family were fit to have placement of the child. We do not agree.

The caseworker testified at the hearing that the child had done very well in aunt's home, had "come out her shell," and had made "a complete turnaround." The caseworker further testified that aunt's home was a nurturing and healthy environment. The court plainly credited this testimony, and father has not otherwise alleged that the home is inappropriate.

Because there is ample record support for the court's finding that aunt was fit and willing to care for the child, we will not disturb that finding. *See People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo.1982); *see also* § 19–3–702(4), C.R.S.2010 (the trial court may determine that the applicable placement goal is to place the child with a "fit and willing" relative).

## V. Probability of the Child's Return Home

Father contends the D & N court failed to find that there was not a substantial probability that the child would be returned to the physical custody of a parent within six months, as required by section 19–3–702(4). The transcript of the hearing, however, reflects that exact finding.

Therefore, we reject this contention.

## VI. ICWA

Finally, father contends that the Department did not comply with the notice requirements of the ICWA. We are unable to determine from the record, however, whether it did so. Accordingly, we remand the case for a determination of this issue.

■ Whether the notice requirement of the ICWA was satisfied is a question of law that this court reviews de novo. *T.M.W.*, 208 P.3d at 274.

Under 25 U.S.C. § 1912(a) and section 19–1–126(1), C.R.S.2010, if the state knows, or has reason to believe, that an Indian child is involved in a dependency and neglect action, it must provide notice to the Indian child's tribe by registered mail, with return receipt requested, of the pending proceedings and the tribe's right to intervene. *B.H. v. People in Interest of X.H.*, 138 P.3d 299, 302–03 (Colo.2006); *see also* § 19–1–103(65.3), C.R.S.2010 (defining "Indian child").

■ The party asserting that the ICWA applies has the burden to produce the evidence necessary for the court to determine whether the child is an Indian child. *See People in Interest of A.G.-G.*, 899 P.2d 319, 322 (Colo.App.1995). The Department, however, is required under section 19–1–126(1)(a), C.R.S.2010, to make continuing inquiries to facilitate this determination. *People in Interest of J.O.*, 170 P.3d 840, 843 (Colo.App.2007).

■ Here, at the shelter hearing, the parents advised the court that the child possibly had Apache relatives, and the Department was ordered to investigate this allegation. At a later appearance, the court instructed the parents to meet with the Department to provide information concerning the ICWA issues. And at a hearing on December 14, 2009, the Department informed the court that it was going to investigate the child's Indian tribe affiliation.

The record, however, does not contain any information regarding whether the Department in fact gave notice to any Indian tribe or the Bureau of Indian Affairs. There are no copies of notices sent to any tribe or return receipts showing that notice was received, and the D & N court did not address this issue at the permanency planning hearing or in its resulting written order.

For these reasons, we conclude that the case must be remanded to the D & N court for further proceedings on this issue. Specifically, the court should reopen the dependency and neglect proceeding in order to hold a hearing to determine whether appropriate efforts were undertaken by the Department and to make any documentation in the Department's possession a part of the record. If appropriate notice was not given to any

tribe identified by the parents, then the court shall direct the Department to comply with the ICWA's notice requirements. If the Department had otherwise determined that the child did not have Indian heritage, then evidence of the Department's efforts in this regard shall also be made part of the record. *See People in Interest of J.A.S.*, 160 P.3d 257, 260 (Colo.App.2007) (an Indian tribe's determination of membership or membership eligibility is conclusive and final).

### VII.  Conclusion

For these reasons, the case is remanded for further proceedings on the ICWA issue. If the ICWA has been complied with, then the order shall stand affirmed, subject to any appeal by father of the ICWA determination. If the ICWA has not been complied with, then the court shall conduct any further proceedings necessary to determine whether the child is an Indian child. If she is determined not to be an Indian child, or if she is determined to be an Indian child and the tribe chooses not to intervene, then the order shall stand affirmed. If she is found to be an Indian child and the tribe seeks to intervene, then the order shall be deemed vacated. *See People in Interest of N.D.C.*, 210 P.3d 494, 500 (Colo.App.2009).

Judge ROY and Judge HAWTHORNE concur.