24CA0337 Peo in Interest of AR 10-31-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0337
Las Animas County District Court No. 22JV30009
Honorable Dawn Marie Mann, Judge

The People of the State of Colorado,

Appellee,

In the Interest of A.R., a Child,

and Concerning B.A.B.,

Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Brown and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 31, 2024

Pamela Nelson, County Attorney, Josi McCauley, Special County Attorney,
Superior, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

James West, Office of Respondent Parents' Counsel, Longmont, Colorado, for
Appellant

¶ 1     In this dependency and neglect action, B.A.B. (father) appeals the judgment allocating parental responsibilities of A.R. (the child) to the maternal grandparents.  Although no motion for an allocation of parental responsibilities (APR) was filed, an APR was requested during closing arguments and then granted by the juvenile court at a contested permanency planning hearing.  Because father wasn't afforded notice or a fair opportunity to be heard on the issues attendant to granting APR to a nonparent, we reverse the juvenile court's order allocating parental responsibilities for the child and remand the case for further proceedings.

## I.     Background

¶ 2     The Las Animas County Department of Human Services (the Department) filed a petition in dependency and neglect alleging the newborn child tested positive for substances and was exhibiting withdrawal symptoms.  The juvenile court granted temporary custody to the Department for placement with the maternal grandparents, where the child remained throughout the proceedings.

¶ 3     The juvenile court adjudicated the child dependent and neglected and adopted a treatment plan for father.  At a review

hearing held nineteen months after the petition was filed, the court set an "all day perm[anency] plan[ning] hearing" to take place two months later and ordered the parties to file witness and exhibit lists seven days before the hearing. Neither the notice of permanency planning hearing nor the witness and exhibit list indicated that the Department would be requesting an APR judgment enter as part of the permanency planning hearing. Indeed, no party had filed a motion for APR or a proposed APR order.

¶ 4 At the hearing, only one of the caseworkers disclosed by the Department testified. The caseworker opined that the child could not be returned home that day or within the next six months and "the official goal" for the child "should be changed to permanent placement with a relative through APR." The caseworker additionally stated that she believed that changing the permanency goal "would allow [the child] to . . . achieve permanency today."

¶ 5 At the conclusion of the permanency planning hearing, after evidence had closed, the Department not only asked the court to "order that the goal be changed to permanent placement with a relative through APR," but also asked the court "to grant permanent custody of [the child] to her maternal grandparents, . . . and that if

2

there are to be visits, that they would be supervised." The juvenile court made permanency planning findings and ordered the "perm[anency] plan change to placement with a relative by allocation of parental responsibility, that allocation of parental responsibility be granted to the maternal grandparents . . . with supervised visitation for the parents at the discretion of [the maternal grandparents]."

## II. Preservation

¶ 6     Father concedes that he failed to object to the procedure when "the juvenile court entered an immediate APR order" and urges us to consider the issue to avoid a miscarriage of justice. *See People in Interest of E.S.*, 2021 COA 79, ¶ 14.

¶ 7     If an error by the juvenile court is considered fundamental or involves a miscarriage of justice, we may consider an unpreserved issue for the first time on appeal. *In re R.G.B.*, 98 P.3d 958, 959 (Colo. App. 2004). The miscarriage of justice exception has a high bar and narrow scope and applies only to limited situations in which an error by the trial court, not otherwise properly preserved for appeal, results in a deprivation of a parent's meaningful opportunity to participate in the proceeding. *See People in Interest*

3

*of M.B.*, 2020 COA 13, ¶¶ 23-24; *see also People in Interest of A.E.*, 914 P.2d 534, 539 (Colo. App. 1996).

¶ 8     The Department and guardian ad litem (GAL) rely on *People in Interest of R.J.B.*, 2021 COA 4, ¶ 33, to argue that there was no miscarriage of justice in this case because "father had notice of the hearing, advice of counsel, and the opportunity to be heard and defend."  *See id.* at ¶ 27 (Fundamentally fair procedures "must include a parent receiving notice of the hearing, advice of counsel, and the opportunity to be heard and defend.") (citations omitted).

¶ 9     However, as detailed below, we agree with father that he didn't have notice of the Department's intent to seek an APR order that would enter at the end of the permanency planning hearing and therefore "was deprived of a meaningful opportunity to participate" in the proceeding.  *See A.E.*, 914 P.2d at 539.  We therefore exercise our discretion to address father's due process argument to avoid a miscarriage of justice.  *See People in Interest of T.W.*, 2022 COA 88M, ¶ 24.

¶ 10    Because we consider the merits of father's claim to avoid a miscarriage of justice, we don't address his argument made in the

alternative that the issue wasn't preserved due to ineffective assistance of counsel.

### III. Permanency Planning Hearings and Allocation of Parental Responsibilities

¶ 11 The Children's Code requires juvenile courts to conduct permanency planning hearings to determine, among other things, if a child can be returned home. § 19-3-702(3), C.R.S. 2024. If a child can't be returned home, "the court shall enter one or more . . . permanency goals" identified by statute. § 19-3-702(4)(a). When, as here, a child is under six years old at the time of the filing of the petition, permanency planning findings made by the court "shall not delay or interfere with reunification of a child or youth with a parent" and "reasonable efforts shall continue to be made to return the child or youth home" unless the court has made findings that reasonable efforts aren't required. § 19-3-702(5).

¶ 12 Permanency planning hearings can be properly combined with other hearings. The Children's Code encourages combining permanency planning hearings with six-month review hearings when possible. *See* § 19-3-702(1)(a). And the Children's Code authorizes combining permanency planning hearings with

5

termination of parental rights hearings in certain circumstances. *See* § 19-3-702(1)(b).

¶ 13    Additionally, as the Department and GAL contend, it's permissible for a juvenile court to properly enter an APR order and close a dependency and neglect action at a permanency planning hearing, under certain circumstances.  *See, e.g., People in Interest of E.C.*, 259 P.3d 1272, 1275 (Colo. App. 2010) (where the court's ability to enter an APR order at a permanency planning hearing was unchallenged and where mother had filed a motion for APR); *People in Interest of C.M.*, 116 P.3d 1278, 1282 (Colo. App. 2005) (remanding for a combined APR and permanency planning hearing where the department had filed a motion for APR to the grandparents).  Indeed, the Children's Code grants jurisdiction to a juvenile court to enter an APR upon the filing of an APR petition and either the adjudication of the child as to all parents or legal guardians, or the adjudication of the child as to at least one parent with the consent of all other unadjudicated parents or legal guardians.  § 19-1-104(6)(a) C.R.S. 2024.  However, "the juvenile court does not have the authority to enter an order allocating

parental responsibilities until after the parents are afforded full due process." *T.W.*, ¶ 35.

## IV. Due Process

### A. Standard of Review and Applicable Law

¶ 14    We review procedural due process claims de novo. *People in Interest of C.J.*, 2017 COA 157, ¶ 25. To establish a violation of due process, there must be a constitutionally protected liberty interest that warrants due process protections. *Id.*

¶ 15    A parent has a fundamental liberty interest in the care, custody, and control of his or her child. *Troxel v. Granville*, 530 U.S. 57, 66 (2000). To protect the parental liberty interest "due process requires the state to provide fundamentally fair procedures to a parent in a dependency and neglect proceeding." *C.J.*, ¶ 27. "At a minimum, a parent must be given adequate notice of the proceeding and an opportunity to protect his or her rights." *People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007). The opportunity to be heard "must be provided at a meaningful time and in a meaningful manner." *R.J.B.*, ¶ 27 (citation omitted).

## B. Additional Background

¶ 16 The Department sent a "Notice of Permanency Hearing" to the parties one month before the hearing. The notice used language from a prior version of the permanency planning statute to state that "the court must determine the future status or placement of the children" at a permanency hearing.[1]

¶ 17 The Department also filed a "Trial Witness and Exhibit List," listing as lay witnesses four case aids, two caseworkers, and the respondents. But the document didn't include any information about the expected testimony of these lay witnesses. The Department also listed two Department employees as possible expert witnesses. The expert disclosures stated only that each identified expert witness "will testify regarding her work with the family during the case, the safety concerns and all other matters." None of these disclosures indicated that the upcoming permanency planning hearing would include a request by the Department that the court enter an APR order and close the case.

---

[1] The Children's Code hasn't included this directive since 2019, when the legislature changed section 19-3-702 to instead direct the court to adopt permanency planning goals. *See* Ch. 237, sec. 1, § 19-3-702, 2019 Colo. Sess. Laws 2349-2354.

¶ 18     Seven days before the permanency planning hearing, the Department filed a "Report to the Court" authored by the caseworker.  The report contained four recommendations: (1) that custody of the child be granted to the maternal grandparents; (2) that father's family time be supervised by a neutral party; (3) that mother's family time be supervised by a family member or neutral party; and (4) that the juvenile court's jurisdiction end and the case close and be certified to a domestic relations case.  But at no point did any party file a motion for APR or proposed APR orders.

¶ 19     At the beginning of the hearing, the Department asserted that "we do come on this morning for a *permanency planning hearing.* The Department has filed their report . . . it does outline the position of the Department regarding *the permanency goal.*  The Department is prepared to move forward today with testimony." (Emphasis added.)  When asked if the Department was asking for permanent custody with a relative to be added as a concurrent permanency goal with return home, the Department responded, "we're requesting that the goal completely change."  The Department didn't offer any indication that it was requesting APR orders or closure of the case that day.  The juvenile court didn't

request opening statements, and the parties proceeded to testimony.

¶ 20 After the close of evidence, the GAL gave the first closing argument. The GAL argued that the proposed change to the permanency plan "is in [the child's] best interest. I think it needs to happen, *and I hope that the court closes the case today*." (Emphasis added.) The GAL's closing statement was the first indication that any party would be requesting case closure effective that day.

¶ 21 In its closing argument, the Department asked "the court to order that the goal be changed to permanent placement with a relative through APR, to grant permanent custody of [the child] to her maternal grandparents, . . . and that if there are to be visits, that they would be supervised." The Department then asked the court "to end jurisdiction, close the case, and certify it to a domestic relations case."

¶ 22 In response, father asked the juvenile court to find that he had successfully addressed safety concerns such that the child could be returned home.

¶ 23 In its oral remarks, the juvenile court specifically declined to make fitness findings, and, as relevant here, found by a

preponderance of the evidence that the child couldn't be returned home on that day or within six months, changed the permanency plan to placement with a relative by APR, granted APR to the maternal grandparents, and granted supervised family time at the maternal grandparents' discretion.

¶ 24 The juvenile court issued an "Order re: Permanency Planning Hearing" two weeks later. Therein the court ordered:

- "The permanency goal is changed to permanent placement with a relative through allocation of parental responsibilities;"

- "Permanent legal and physical custody is granted to [the maternal grandparents];"

- "Any visits between [the child] and [the respondents] are at the discretion of [the maternal grandparents] and are to be supervised;"

- Respondent parent counsel's motion to withdraw is granted; and

- "Jurisdiction is ended and the case is hereby closed and certified to [a] domestic relations case."

## C.    Analysis

¶ 25    Father argues that he wasn't afforded due process before the juvenile court granted an APR to the maternal grandparents and closed the dependency and neglect action.  We agree.

¶ 26    To begin, we reject the Department and GAL's assertion that notice that the hearing would include a request for APR wasn't required.  They contend that section 14-10-123(1)(c), C.R.S. 2024, excuses them from providing notice because that statute doesn't require filing a petition or motion for APR when a nonparent has had physical care of a child for more than one hundred and eighty days.  But section 14-10-123(1)(c), a provision of the Uniform Dissolution of Marriage Act (UDMA), doesn't apply to an APR entered in a dependency and neglect case.  A dependency and neglect proceeding "concerns different matters and fulfills a different purpose" than domestic relations proceedings conducted under title 14 and the UDMA.  *People in Interest of D.C.*, 851 P.2d 291, 294 (Colo. App. 1993).  In fact, when custody determinations are being made under the Children's Code "the provisions of the UDMA . . . are no[t] relevant to the proceedings. . . [and] the custody dispute is to be conducted pursuant to the provisions of the

12

Children's Code." *Id.* at 293. We are not aware of, and no party cites, any provision in the Children's Code that is similar to section 14-10-123(1)(c). To the contrary, the Children's Code authorizes the juvenile court to enter an APR order "upon the *petition* of a party." § 19-1-104(6)(a) (emphasis added).

¶ 27   Nor do we agree with the Department and GAL's contention that the (outdated) language in the written "Notice of Permanency Hearing" was sufficient to allow the Department to request an APR judgment after the close of evidence at the permanency planning hearing without further notice to father. Notice of a hearing to change a permanency planning goal isn't the same as notice of a contested hearing to enter an APR and close a dependency and neglect case. The notice of a permanency planning hearing provided no indication that the Department intended to move for an APR order at the conclusion of the permanency planning hearing. No party filed a petition, motion, or proposed APR orders. And father wasn't given notice that he should present evidence and argument regarding the terms of an APR order, including arguing for visitation.

¶ 28     Nor does the record provide an indication that father had constructive notice of the Department's intent. The hearing in question was set as an "all day perm[anency] plan[ning] hearing." The expected contents of the hearing weren't discussed either at its setting or at the review hearing between when the permanency planning hearing was set and when it was held. The Department filed only a list of names as its witness list, with no information about their expected testimony. Although the Department's report to the court listed APR and case closure as its recommendation, there's no indication that the Department intended to ask the juvenile court to enact those recommendations and close the case on the day of the permanency planning hearing in addition to changing the permanency planning goal.

¶ 29     Nor was it apparent that the Department would be seeking APR orders and case closure during the hearing. In opening remarks, the Department asserted they were there "for a permanency planning hearing" and "were requesting that the goal completely change." The Department didn't make clear that it was requesting the juvenile court grant permanent custody of the child to the maternal grandparents until the last moments of its closing

14

statement. Likewise, the GAL didn't clearly describe the relief being requested until the final lines of her closing argument, where she stated "my position as GAL is that this change in permanency planning is in [the child's] best interest. I think it needs to happen and I hope that the court closes the case today."

¶ 30 The change in the relief being sought by the Department after the close of evidence meant that father was deprived of a fair opportunity to be heard on issues relevant to the entering of an APR order, including issues of decision-making and family time, which wouldn't have been relevant in a hearing limited to changing a permanency planning goal.

¶ 31 We therefore conclude the juvenile court erred by entering an APR order at the conclusion of this permanency planning hearing.

¶ 32 We also conclude that reversal is required. Under C.A.R. 35(c), "[t]he appellate court may disregard any error or defect not affecting the substantial rights of the parties." *See also* C.R.C.P. 61. "An error affects a substantial right only if it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010) (citation omitted).

¶ 33    We determine that the error substantially influenced the outcome of the case and impaired the basic fairness of the hearing for three reasons.

¶ 34    First, the practical impact of changing a permanency planning goal in a case governed by expedited permanency planning (EPP) statutes is negligible.  In an EPP case, a department is required to provide reasonable efforts to return a child home during the life of the dependency action, regardless of the permanency planning goal adopted by the juvenile court.  § 19-3-702(5)(b) (In cases where the child was under six years old at filing, "[r]egardless of any permanent home findings made pursuant to this section, reasonable efforts shall continue to be made to return the child or youth home . . . .  Any findings by the court regarding a permanent home shall not delay or interfere with reunification of a child or youth with a parent.").  In stark contrast, closing a dependency action with an APR order to a nonparent discontinues all services that would otherwise be offered as part of a department's reasonable efforts obligations.

¶ 35    Second, as the juvenile court noted in its order, it need not make a determination of parental fitness as part of a permanency

planning hearing. *See* § 19-3-702. And, indeed, it declined to make any findings regarding parental fitness as part of its "Order re: Permanency Planning Hearing," which closed the case and certified the matter to a domestic relations court. But while a juvenile court isn't required to find that a parent is unfit in order to enter an APR to a nonparent, the court must consider fitness to determine the standard of proof by which it may enter orders and whether the parent is entitled to a presumption that they are acting in the child's best interests as required by *Troxel*. *See People in Interest of J.G.*, 2021 COA 47, ¶ 44.

¶ 36    At a permanency planning hearing, the applicable burden of proof for the findings required by statute is a preponderance of the evidence. *People in Interest of R.W.*, 989 P.2d 240, 243 (Colo. App. 1999). But to grant an APR to a nonparent over a fit parent's objection, "the presumption favoring the parent's decision can be rebutted only by clear and convincing evidence that granting parental responsibilities to the nonparent is in the child's best interests." *People in Interest of M.W.*, 2012 COA 162, ¶ 14. Although an adjudication overcomes the so-called *Troxel* presumption, here the child's sibling had been successfully

17

returned to father's care and dismissed from the dependency and neglect action, creating a question of whether father had regained fitness. *See People in Interest of N.G.G.*, 2020 COA 6, ¶¶ 18-19 (a parent may regain their *Troxel* presumption following an adjudication if the court finds that the parent is fit). And a determination of parental fitness determines the standard of proof required for decisions made by the domestic relations court after certification, where "there is a presumption in favor of modifying [APR] orders at [a parent]'s request." *In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 32. But without an indication that the juvenile court might be entering APR orders until after the close of evidence, father didn't have an opportunity to request or present evidence related to a fitness finding.

¶ 37    Finally, the procedure employed by the juvenile court eliminated father's opportunity to present evidence outside the scope of a permanency planning hearing but central to the terms of an APR order. Father didn't present evidence concerning an appropriate family time schedule, level of supervision, or his ability to cooperate with the maternal grandparents serving as the placement provider. Nor could he have reasonably been expected to

do so given the lack of notice about the nature of the juvenile court's final decision.

¶ 38    Simply put, the likelihood that the terms of the final APR would have been different is sufficient to demonstrate that the juvenile court's procedural due process error substantially influenced the outcome of the case and impaired the basic fairness of the hearing.  Accordingly, the juvenile court's procedural error can't be disregarded as harmless.

## V.    Disposition

¶ 39    The judgment allocating parental responsibilities of the child is reversed, and the action is remanded to the juvenile court for further proceedings consistent with this order, including a permanency planning hearing where the court shall consider and make findings consistent with sections 19-3-702(3), (4), and (5). Placement is to remain with the maternal grandparents until further order of the juvenile court.  Should any party file a petition for APR pursuant to section 19-1-104(6)(a), or request other relief under the Children's Code, the court may proceed accordingly.

JUDGE BROWN and JUDGE MOULTRIE concur.

19